Good morning. May it please the court. I'm Gilbert Levy. I represent the petitioner, Mr. Cox. Our position is that Mr. Cox's habeas corpus petition is not time-barred because post-conviction counsel filed a state post-conviction petition in a timely manner under 28 United States Code 2244 D1D and 2244 D1A. Under 2244 D1D, the time begins to run on the date when the claim could have been discovered in the exercise of due diligence. In this case, we maintain that the claim could only have been discovered in the exercise of due diligence when the evidence supporting the claim actually was discovered. In this case, we are talking about the emails between the deputy prosecutor and the informant's attorney and the deputy prosecutors and the informant. Prior to the date of the actual discovery, which was August 2017, post-conviction counsel would have had no reason to know that the emails existed. And one reason, perhaps the main reason why counsel had no reason to know that the emails existed is because at the time of trial, the deputy prosecutor who testified gave essentially false testimony as to the nonexistence of records. Now, the trial ends in 2014, and we have proceedings after that. Why wasn't that information discoverable when you go into state habeas? Was the information not sought? I mean, it was clearly an issue at trial. As I read the portion of the transcript with respect to the testimony of the guy who's got the problems, it just jumps out at you that maybe there was a deal and he's not admitting to it. So wasn't it discoverable in state habeas if the information had been sought? Well, it was discoverable in state habeas. Could you speak into the microphone, please? I can't hear you. I'm sorry. I apologize. It was discoverable in state habeas. State post-conviction counsel was appointed or was retained in January of 2017. She made a public records request in July of 2017, found out about the emails in August of 2017. If she had immediately sought to file a public records request as soon as she was appointed and the public records... Because she doesn't file that until sort of halfway through the one-year period. Well, if she doesn't file it, she didn't file it until December of 2017. But assuming that the date of discovery was the date that it could have been reasonably discovered, her petition would have been timely. And my point is simply that if she sought the records as soon as she was appointed, got the records in February of 2017, which would have been a reasonable time for a response to a public records request, she had until February of 2018 to file the state habeas petition. And she filed in December 2017. So it was timely. But the main point, I think, Your Honor, is that here the misleading testimony, which was told at the time of trial that there weren't any records, was the reason why post-conviction counsel would not have known about the existence of the records at an earlier date. And that's the fact, Your Honor, that distinguishes this case from the Ford v. Gonzalez, which is the Ninth Circuit case dealing with the timeliness of Brady claims. Yeah. So this argument is so far going to equitable tolling. Are you continuing to argue about the one-year period? Because I think you're outside the one-year period almost no matter how you calculate it. Well, I mean, the same issue pertains to equitable tolling. There has to have been due diligence. We maintain that there was due diligence here. And there has to be some extraordinary circumstance which prevented the petitioner from filing the petition in a more timely manner. I'm not sure my question was made clear. The due diligence and so on goes to equitable tolling. Exactly. Are we outside the one-year period? That's the only time you really need equitable tolling is when you're outside the one-year period. Do you concede you're outside the one-year period? No. You don't? No. So why are you not outside the one-year period? We're not outside the one-year period because we believe that the basis of the claim was discovered in the exercise of due diligence. In August. I'd like to reserve the remainder of my time. What month did she discover it? She discovered it in August. Tell me. What? Maybe I'm wrong. When did she get the materials back? She received the materials. She first received the materials in August of 2017. She then proceeded to investigate further and filed behaviorist petition in December of 2017. But your contention that she's within the one year rests on the fact that she learned about this information in August when she got the response. That's correct, Your Honor. And in our position is that she had, prior to August, she had no reason to believe that the records existed because the defense was told at the time of trial that there were no such records.  Would you like to reserve the balance of your time? That's fine. I'd like to reserve the remainder of my time. Okay. Thank you, counsel. Good morning, Your Honors. May it please the court. Holger Sontag here to represent the respondent. This court should affirm the district court's dismissal of Mr. Cox's behaviorist petition as untimely. And the court should do that for three reasons. First, the petition is untimely under 2244 D1A. Second, Mr. Cox has waived his argument under D1D. And alternatively, his D1D argument is without merit. And third, Mr. Cox is also not entitled to any tolling, either statutory or equitable. Let me pick up where you left off, and that is the diligence inquiry under D1D. As Judge Fletcher pointed out, the trial was already in 2014. That's when the Brady claim accrued, because the state obviously under Brady had an obligation to disclose any existing plea agreements or whatnot prior to the trial. As I mentioned, the trial happened in 2014, in February, precisely. So Mr. Cox's insistence that first the e-mails brought it to his mind that there might have been a Brady violation is a very, very late date, because why couldn't he have not discovered it first, earlier than that, i.e. either already during the trial or soon after the trial? As was discussed, he filed in 2017, in July of 2017, he filed a public records request, and he got results returned within a month. So he should have made a public records request at the time of trial? He could have done that. He was represented by counsel at the time, obviously, so he could have done that. He could have done that himself following trial. Mr. Cox is a very sophisticated individual. He worked for the Department of Financial Industries in Washington. So he was certainly, one can assume, even from his professional life, familiar with public records requests as a state employee. He could have done that. And this also makes this case much more... You don't think the state just had, the prosecutors just had an obligation to turn over those e-mails? The e-mails was extensively litigated in state court. Didn't they have an obligation to turn over those e-mails at the time of the trial, before trial? No, I don't think so, because they were not... So it was okay for those prosecutors to get up there and basically not tell the truth? They were telling the truth, as the state court found in 2021. And Mr. Cox has not presented any clear and convincing evidence that that was a wrong finding. What was in those e-mails, and that was perfectly consistent with the trial testimony provided by the prosecutor, was that there were discussions about a plea agreement. But as it turns out, Mr. Parmley, the individual that Mr. Cox spoke to in the jail, he was prepared to testify even without a plea deal. And as was stated in one of the e-mails, the prosecutor who handled actually Mr. Cox's trial said, okay, well, if he's ready to testify without any quid pro quo, why give away the house? Why give away the farm? So, this case is very different from the Starnes case that Mr. Cox relies on, because Mr. Parmley is not Mr. Gonzalez in the Starnes case. So, in other words, in Starnes, the petitioner had no reason, because he didn't know what the one witness testified during the grand jury proceeding. And the prosecutors had made some dismissive remarks about the witness, basically, oh, nothing to see here, basically. But this case is very different, because Mr. Cox obviously had firsthand knowledge of what went down at the jail. And as he testified during his trial, he spoke, I mean, Mr. Parmley approached Mr. Cox to get money from him, offering him to kill Mr. Lopez-Ortiz. But that was not obviously what the state had argued, and that was also not what Mr. Parmley testified at trial. There were, in other words, these discrepancies. And Mr. Parmley testified, okay, there was no plea deal. I wanted, I was looking for one, but eventually I testified without the plea deal. This is what the prosecutor testified, Mr. Thompson. And so if, again, Mr. Cox has this firsthand knowledge of what actually went down at the jail, and in his factual universe, it was Mr. Parmley who approached him, Mr. Cox, offering him, hey, I hear you're in trouble. How about I kill this person and you give me $500 so I can make bail? Very different situation, and that is, therefore, why this case is very much like the Ford case, where this court found, look, there were all these indicators that there might have been a plea deal between one of the witnesses and the prosecution, that that was not fully developed, that was not fully disclosed. And the same was here. Mr. Cox testified, Mr. Parmley testified, Mr. Thompson testified. That was all presented to the jury, presented to Mr. Cox. So he knew exactly what the position of these individuals were. And if he didn't agree with what Mr. Cox said, what Mr. Thompson said during trial in 2014, he had three years to develop this record. He had three years to file a public records request that took one month to return. In other words, with the exercise of due diligence as required under D1D, Mr. Cox could have ---- That is to say, you don't need to wait until the commencement of your state habeas proceeding to file the public records request. He could have filed a state habeas proceeding concurrently with his direct appeal. With his direct appeal. Absolutely, because the direct appeal obviously is limited to the trial court record. But he could have filed a state habeas petition at that very same time. And apparently he had the means to retain counsel, which he did in January of 2017. But he didn't even need to be filing a state habeas petition in order to file the public records request, did he? No, exactly. Exactly. He could have just filed it. He was ---- I mean, again, that's not in the record. But I would just assume because the court has to look at these general markers, so to speak, when it comes to determining what is due diligence under all the circumstances. And you do look at, let's say, the education, the sophistication of the individual. And Mr. Cox certainly was a very sophisticated individual, very likely familiar with public records. So all of this seems to be going to the question of equitable tolling. What about just a straightforward expiration of the one-year period? The other side argues that the one-year period had not expired. Well, that I would say it had expired because, again, the direct appeal under state law, as stated by the Court of Appeals in its mandate, the direct appeal became final on December the 9th of 2016. And that means that his federal limitation period expired on December the 11th of 2017. And he filed his state habeas petition about a week outside of that period. That's why I said there was no statutory tolling for him because simply having a timely state habeas petition does nothing for him. So what happens if the correct date is not December 9th but rather December 22nd, as is argued by the other side? Yeah, then his state petition would have been within the federal period of time and therefore under – You see, I'm not sure that's right. That is to say it's later but then he's got an additional period once his state remedy is denied. It starts to run again. Right. And I think he had three days and he didn't file within three days. I think he's outside. Yes, but it would have at least given him some statutory tolling for sure. If he had just filed his state petition, the PRP, within the federal one-year period of time which ended on December the 11th. So if he had filed it on December the 3rd of 2017, then his state petition would have been tolling under 2244 D2. Yeah, yeah. No, I understand that. And once the state petition is disposed of, then the clock starts running again. Absolutely. And so when it starts running again, how many days does he have left? I'm not sure that I made that calculation here. I see. But what our position is under state law, his direct appeal became final on December the 9th of 2016. And therefore, the one-year period of time under D1A expired before he even filed his state petition. So he argues that, in fact, it doesn't start running from December 9 because there's a petition for correction. And therefore, it's extended. What's your response to that? My response to that is that not every motion filed after a decision is a motion for reconsideration. This was not a motion for reconsideration as the state court, the Court of Appeals itself determined because in the mandate it stated that it became final on December 9th, not on December 23rd of 2016. And that is dispositive for this court under Bradshaw and Ritter. So the argument is that this does not come within the state system for making it non-final because it's just a ministerial correction of having given the wrong name twice.  Not every motion filed after a decision is a motion for reconsideration, and this one was not. Therefore, the direct appeal became final, rendering his state petition. And if that's right, then the only argument he's got is for the equitable tolling. It's the equitable tolling and the diligence under D1D. But as we have argued and established is that under D1, you have to start the one year from the later or from the latest off. And here in this case, the latest off was basically the finality of his direct appeal, not the reasonable exercise of diligence, which would have expired already probably in 2014. In other words, three years before. Thank you, counsel. Very good. Thank you so much. Thank you. Very briefly, what was unique about the emails, Your Honors, is that had they been made available to trial counsel at the time of trial, trial counsel could have impeached the deputy prosecutor who testified. He also could have argued more effectively that this whole thing was done with a wink and a nod, that they actually gave the confidential informant the exact same deal that he had asked for in his discussions with the detective, but they made it appear basically through subterfuge that there was, in fact, no consideration for testimony. So these emails were particularly unique. When Thompson testified, did he testify that the emails existed? He didn't. What Thompson said, and I have the quote here, he was asked, so in any of the notes or conversations with Mr. Parmley or with Mr. Hack, was it mentioned that he had hoped for, in fact, for a better deal? And the answer was no. And I think a reasonable person on hearing that testimony would assume that there were no records pertaining to conversations with the informant's attorney. And having known that, and also that there was no mention of any emails in the discovery or in defense counsel's file, it's simply that at the time the post-conviction counsel came on the case, she had no reason or would have had no reason to know that the emails existed, and the same with Petitioner earlier in the case. I'd like to, if I could, briefly discuss the other issue, which is timeliness under 2241 D1A. We maintain that the motion that was filed to correct a factual error was in fact a motion for reconsideration because under Washington court rules, there is no other remedy for correcting factual errors, and whether this was a typographical error or a misstatement of fact by the court of appeals, it was, in fact, a factual error. The State moved to correct the factual error. This was a motion for reconsideration. It extended the time limit until December. The time limit began to run on the date that the later order was entered, which was the... Yeah, but then I think you've still got a problem because when the State is finished, the clock starts to run again, and I don't think you filed timely once the clock started to run again. Well, the order amending the petition in response to the motion for reconsideration was entered on November 22, 2016. Petitioner then had until December 22 or December 21 to file the State post-conviction petition. The State post-conviction petition was filed on December 19. So if the date that the court of appeals entered an order amending its opinion is the last date for seeking review, then you have 30 days from that date to file a post-conviction petition, and she did. Unless the court has further questions. All right, thank you, counsel, for your helpful argument. Thank you. The case that we just heard submitted is our final day of arguments, so I'd like to thank our courtroom deputy, our AV staff, our IT staff for being so helpful this week. And with that, we will adjourn. Thank you.
judges: FLETCHER, PAEZ, DESAI